**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JOHN DAVID BAKER, | ) |
| Petitioner, | ) Civil Action No. 6: 07-40-DCR |
| V. | ) |
| DONALD STINE, Warden, | ) **MEMORANDUM OPINION** |
| Respondent. | ) **AND ORDER** |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

John David Baker, an individual presently confined at the United States Penitentiary-McCreary in Pine Knot, Kentucky, has submitted a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, as well as a motion to proceed herein *in forma pauperis*. The matter is before the Court for screening.[1]  28 U.S.C. §2243.

During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it

---

[1] This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

Dockets.Justia.com

determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## ALLEGATIONS AND CLAIMS

The Petitioner challenges the Bureau of Prisons' ("BOP") computation of his current sentence on several grounds. He broadly claims that the BOP considers July 29, 2004, as the starting date of his federal sentence, but that he is entitled to seven years of prior credits (from September 10, 1997, until July 29, 2004). The following is a summary or construction of the relevant dates and allegations, as presented in his completed form petition, memorandum of law, and attached exhibits. [Record No. 2]

On September 10, 1997,[2] the Petitioner alleges that he was taken into the custody of the United States Marshals Service ("USMS") regarding a June 18, 1997, federal arrest warrant for being a felon in possession of a firearm. After several hours of questioning, those agents purportedly surrendered the Petitioner to the Sheriff of Brevard County, Florida. Baker claims that the sheriff placed him in the local Jail on unrelated state charges the next day. Baker complains that he was held on "'no bond' status" there because the USMS had placed a "hold" on him. The Brevard court allegedly sentenced him to 53.7 months' incarceration in a state penal institution.

On April 2, 1998, the USMS took custody of Baker and brought him to the United States District Court for the Northern District of Florida, where a jury convicted him of unlawful

---

[2] In at least one administrative form, the Petitioner refers to his arrest as occurring on September 5, 1997. The Court has used the September 10th and 11th dates, which he repeats more frequently and which the Bureau of Prisons uses in its calculation.

possession of a firearm, in violation of 18 U.S.C. §922(g)(1). In that case, *United States v. John David Baker*, No. 97-CR-080-001, the Petitioner was sentenced to 235 months' imprisonment on February 23, 1999. Baker attaches a copy of that criminal Judgment as Exhibit A (hereafter, "Ex ___"). He appealed, claiming that the trial court erred in denying two defense motions, one *in limine* and one for a judgment of acquittal. However, the the Eleventh Circuit affirmed the conviction without a written opinion. *United States v. Baker*, 207 F.3d 662 (11th Cir. 2000) (Table).

On May 18, 1999, the USMS allegedly returned Baker to state custody for service of the state sentence. Two years later, on August 13, 2001, Petitioner was released from service of the Brevard County sentence but was transferred to another Florida county jail "for an unresolved violation of probation." The Petitioner was sentenced by the Hillsborough County Circuit Court to time served for the violation, and he was released on August 24, 2001.

According to the Petitioner, upon his release he did not even have clothes to wear home, because he had assumed that the federal authorities would assume custody to take him to a federal prison. He attaches affidavits of his mother and himself, wherein they relate that Baker and other family members contacted many various "federal law enforcement" offices and "federal agencies," informing them of his release, asking if he was free because his appeal had been successful, and seeking confirmation that his release was permanent. Purportedly, he even called the nearest federal prison and offered to self-surrender but was told not to do so. He contends as follows:

> [A]ll declined to assert jurisdiction over the Petitioner for the District Court's Order of commitment. Petitioner was informed that his release was not made in

> error due to the fact that the NCIC checks that had been performed showed he had no pending cases nor warrants for his arrest.

[See Memorandum at p. 4.]

Baker states that he was able to obtain a state driver's license, worked and paid taxes yearly for 2001 through 2004, and "lived a law-abiding life for two years, eleven months, and seven days," as a fully rehabilitated citizen – until July 29, 2004. On that date, the Petitioner alleges, federal and county authorities unlawfully entered his residence and placed him under arrest. He complains that he was brought to a maximum security BOP prison and his sentence was wrongly calculated to have begun on the same date of his apprehension (July 29, 2004).

The Petitioner seeks immediate release from confinement or, in the alternative, credit toward his federal sentence from the date of his original arrest by the USMS, September 10, 1997, to the July 29, 2004 date, when his federal sentence is currently calculated to begin. He urges that he is entitled to these credits based on several grounds, and he attaches copies of the BOP's responses to his attempts to challenge its calculation and obtain the credits he seeks.

The Petitioner first claims that he is entitled to credit for the entire seven year period because he came into federal custody when the USMS arrested him pursuant to a federal warrant on September 10, 1997, and it was not ever properly relinquished by his federal custodians. He contends that the USMS failed in its duty to take him before a magistrate judge immediately and also violated both state and federal law in turning him over to the Brevard County Sheriff who had no warrant for his arrest. Further, the judge in the state court purportedly recognized in the record that primary custody rested with the federal authorities, and so he ordered the state sentence to run concurrent to Baker's federal one. Additionally, he argues that the Brevard

County Sheriff's actions support this claim, as the Sheriff did not take him to state prison to begin service of the state-imposed sentence, but held Baker until the USMS took him back, thus returning the Petitioner to the custody of the primary custodian.

Exhibit D (the BOP's responses as the Petitioner sought these credits administratively) reflects the BOP's position. It begins with the proposition that the Petitioner's September 11, 1997 arrest was made by state authorities, thus lodging primary jurisdiction with the state. According to the BOP, Baker did not come into USMS custody until April 2, 1998, and that was only on a writ of *habeas corpus ad prosequendum*. On May 17, 1999, he was returned from the writ to the primary custody of the state after the federal trial and sentencing. The Petitioner counters that the existence of a writ of *habeas corpus ad prosequendum* is not determinative on the issue of who is the primary custodian.

The BOP argues that the entire time which the instant Petitioner spent in state authorities' custody (from his September 11, 1997 Brevard County arrest to his August 24, 2001 release from the custody of another Florida county) was credited to his state sentence and, under 18 U.S.C. §3585(b), a federal prisoner may not receive prior custody credit for time which was "credited against another sentence." *Id.*

Moreover, the BOP contends that the federal court did not order its sentence to run concurrently with the state sentence, so consecutive service of the federal sentence is appropriate. Additionally, the BOP's national office wrote that at the regional director level, "your case was considered and denied a *nunc pro tunc* designation." To this, the Petitioner replies that such consideration of the purported *nunc pro tunc* designation was done without his

knowledge and so he was unable to challenge it administratively to exhaustion so as to prepare the way for him to raise it in Court.

Regarding the three year period when Baker was at liberty (from August 24, 2001- July 29, 2004), the BOP contends that under other language in 18 U.S.C. §3585(b), Congress has decreed that the prior custody credit is limited to time spent only in "official detention." Here, the Petitioner has admitted that for the full three year period he was not detained by any officials, but was at liberty.

The Petitioner also argues for an equitable grant of this time. He stresses that it was not his fault that the federal authorities failed to assume custody when the state released him in 2001. He claims that at the time of that release he did what he could to check the continuing validity of or to surrender to the federal sentence and he asserts that he demonstrated his full rehabilitation during that three year period. Therefore, his sudden seizure by federal authorities in 2004 (which was three years after his release and five years after the 1999 imposition of sentence and commitment to the United States Marshals), amounts to the loss of a liberty interest without due process and is conduct shocking to the conscience of the Court, in violation of the Fifth Amendment to the U.S. Constitution. Further, the government should be considered to have waived service of the federal sentence, or should be estopped from requiring him to serve that time.

Concerning legal precedent for the relief requested, the Petitioner relies upon and quotes liberally from cases within as well as outside the Sixth Circuit. *See, e.g., United States v. Croft*,

450 F.2d 1094 (6th Cir. 1971); *United States v. Mercedes*, 1997 WL 458740 (S.D.N.Y. 1997) (not reported); *Lanier v. Williams*, 361 F.Supp. 944 (E.D.N.C. 1973).

DISCUSSION

Federal regulations afford prisoners administrative review of the computation of their credits (*see* 28 CFR §§542.10-542.16 (2006); *United States v. Lucas,* 898 F.2d 1554, 1556 (11th Cir.1990)), and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies. *See United States v. Bayless,* 940 F.2d 300, 304-305 (8th Cir.1991); *United States v. Martinez,* 837 F.2d 861, 865-866 (9th Cir.1988).

In the present case, the Petitioner has alleged exhaustion of the BOP administrative remedy process, Administrative Remedy No. 386228, and his exhibits include a final denial of the credits by the BOP's Administrator of National Inmate Appeals on January 11, 2006. One year after exhaustion Baker filed the petition herein, making the claims as set out above, indicating that he had not brought these claims in another court action and verifying via affidavit that his allegations are true. Accordingly, in light of the foregoing, it is hereby

**ORDERED** as follows:

(1) The Clerk of the Court shall serve, by certified mail, return receipt requested, a copy of record entry number 2 and this Memorandum Opinion and Order upon D. L. Stine, Warden of USP-McCreary; the Attorney General for the United States; and the United States Attorney for the Eastern District of Kentucky.

(2)   Respondent, by counsel, shall answer or otherwise defend within sixty (60) days of the date of entry of this Order. Respondent shall also file with his answer all relevant documentary evidence which bears upon the allegations contained in the petition.

(3)   Upon entry of a response or upon the expiration of the 60-day time period, the Clerk of the Court shall notify the Pro Se Office.

(4)   Petitioner shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(5)   For every further pleading or other document he wishes to submit for consideration by the Court, the Petitioner shall serve upon Respondent, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The Plaintiff/Petitioner shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to Respondent or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

This 8th day of February, 2007.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge