NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JOHN DAVID BAKER, | ) |
| Petitioner, | ) Civil Action No. 6: 07-40-DCR |
| V. | ) |
| | ) **MEMORANDUM OPINION** |
| DONALD STINE, Warden, | ) **AND ORDER** |
| Respondent. | ) |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

BACKGROUND

On February 1, 2007, John David Baker, an individual then confined at the United States Penitentiary-McCreary in Pine Knot, Kentucky, submitted a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. Through this petition, Baker seeks credit toward the federal sentence which he is currently serving for a time period of almost 7 years, beginning with his arrest on September 10, 1997, through several sentencings in state court, the imposition of his federal sentence in 1999, and the time thereafter until July 29, 2004 (the date on which the Bureau of Prisons calculates that his federal sentence began).

Upon screening the petition, this Court issued a Memorandum Opinion and Order in which it detailed Baker's allegations regarding events taking place during the entire September 10, 1997, to July 29, 2004, time period. The Court then cited to the case law upon which Petitioner is relying, acknowledged that he had apparently exhausted the BOP administrative

remedy process on the topic of credits for this time period, and ordered service of the petition on the Respondent. Warden Stine has now filed a response which traces the same series of events and concludes that the Petitioner is not entitled to credit for any of the time which he seeks. Although the Petitioner was granted permission to file a traverse and was twice granted extensions of time to do so, he has not responded as of this date.[1]

## POSITIONS OF THE PARTIES

The time at issue falls into two distinct parts: (i) September 10, 1997 - August 24, 2001, and (ii) August 24, 2001 - July 29, 2004. The BOP has given Petitioner no credits toward his federal sentence for either of these periods, but has calculated his sentence as not beginning until the last date (July 29, 2004). Based on the BOP's calculation, the Petitioner's current projected release date is August 21, 2021.

### September 10, 1997 - August 24, 2001

Baker was incarcerated for the first period, beginning with his arrest in Brevard County, Florida, on September 10, 1997. This period ended on August 24, 2001, when he completed service of several state sentences and was released from state custody. According to the Petitioner, on the first of these dates (September 10, 1997), he was arrested by the United States Marshal's Service ("USMS") on a federal warrant for the charge of being a felon in possession of a firearm. After several hours of questioning, the Marshals purportedly surrendered him to the Sheriff of Brevard County, Florida, who placed him in a local jail on unrelated state charges

---

[1] The Petitioner has filed a motion to amend his original petition to include the United States Attorney General as an additional party. [Record No. 21] That motion will be denied as moot.

the next day. The Brevard County Court eventually sentenced him to 53.7 months' incarceration.

The Petitioner alleges that during this 1999-2001 time period, the USMS re-asserted its custody and brought him to the United States District Court for the Northern District of Florida, where he was tried on the firearm charge. A jury found him guilty of being a felon in possession of a firearm. On February 23, 1999,[2] he was sentenced to a federal term of imprisonment of 235 months. *United States v. Baker*, 207 F.3d 662 (11th Cir. 2000) (Table) (affirming the trial court).

A few months after his federal sentencing (May 18, 1999), the USMS allegedly relinquished Baker to the custody of the State of Florida again, and he began service of the sentence which had been handed-down in Brevard County. Two years later (August 13, 2001), Petitioner was released from that sentence and was transferred to another Florida county jail. Eventually, the Hillsborough County Circuit Court sentenced the Petitioner to time served, and he was released from all state obligations on August 24, 2001.

The Petitioner's position is that he was initially arrested by the USMS, pursuant to a June 18, 1997, federal arrest warrant for the gun possession charge. Therefore, his federal custody was primary. As a federal detainee, he was disqualified from obtaining release on bond from state authorities when he was placed in a local jail the next day. The Petitioner claims that, during the next four years, he was in various Florida jails and penal facilities and in various

---

[2] The Petitioner argues, alternatively, that if the Court does not consider the date of his arrest as the beginning of his sentence, the Court should determine that the federal sentence commenced on this date, when he was in federal custody and the federal sentence was imposed. Under this scenario, he would be entitled to a February 23, 1999, commencement date for service of the federal sentence, with continuous service of the sentence since that date.

courts, including more than a year spent for his trial and sentencing on the firearm charge in the federal court. He claims that, throughout that time, he remained in the primary custody of the USMS.

Baker argues that, because the USMS never relinquished its primary jurisdiction, he should now be given prior custody credit toward his federal sentence for all of the time he spent in custody since his arrest, regardless of his physical location. The Petitioner also appears to contend that the federal authorities wrongly relinquished him to the state authorities. Under either contention, he asserts that the federal government should be considered to have waived its right to delay commencing his sentence until after completion of the state sentences, or that it should be estopped from denying him credits for all of the time which he spent confined, from his arrest by the USMS until he finished the state sentences (September 10, 1997 - August 24, 2001).

The Respondent contends that the Petitioner's arrest on September 10, 1997, was not by the USMS, but by authorities of the State of Florida who thereby obtained primary custody and did not relinquish it until the Petitioner had satisfied his Florida sentences (August 24, 2001). The Respondent attaches the supporting declaration of a BOP official, James E. Hazelton, a specialist in its "Designation and Sentence Computation Center," who insists that Petitioner's arrest was by state authorities. Moreover, he avers to have Brevard County's verification that it was their sheriff's deputies who arrested Baker. Hazelton also points to a portion of the federal court's docket which indicates that its warrant was not executed, and "[t]he U.S. Marshals Form 129 does not indicate an arrest on that date." Further, additional attachments,

including Petitioner's Pre-Sentence Report and BOP print-outs, show that the Petitioner's only period in the custody of the USMS was from April 10, 1998 until May 19, 1999, and that was pursuant to a writ of habeas corpus *ad prosequendum*, for his trial and subsequent sentencing on the federal charge.

The Respondent also relies upon 18 U.S.C. §3585(a), which provides that a sentence cannot commence until the prisoner is received in custody for service of that sentence, which, in Petitioner's case, was not until July 29, 2004. The next subsection of the same statute provides for credits toward a prisoner's sentence for "any time he has spent in official detention prior to the date the sentence commences," but that time must be time which "has not been credited against another sentence." 18 U.S.C. §3585(b).

Applying the statute to the facts presented, the Respondent argues that because the Petitioner came into primary state custody on the day of his arrest and because he received credit toward his state sentences for all the time he spent in custody – from his initial arrest until his release after service of all state sentences – he cannot also have it credited toward the federal sentence. By statute, he is not entitled to the credits which he seeks for the September 10, 1997 - August 24, 2001 time period. Accordingly, the Respondent maintains that the BOP rightfully awarded Baker no prior custody credits toward his federal sentence for this time period.

<u>August 24, 2001 - July 29, 2004</u>

The parties agree that from his release by the State of Florida on August 24, 2001, Baker was at liberty until July 29, 2004 (the date on which the USMS arrested him to begin service of the 235-month federal sentence and when the BOP computes that his sentence commenced).

According to the Petitioner, upon his release by the Florida authorities on August 24, 2001, he did not even have clothes to wear home because he had assumed that the federal authorities would resume custody to take him to federal prison for service of the federal sentence. He has attached affidavits of his mother and himself, swearing to inquiries which they made to several "federal law enforcement" offices and "federal agencies," even the nearest federal prison, informing them of his release, asking if he was free because his appeal had been successful, and seeking confirmation that his release was permanent. When none of these agencies had pertinent records about him or his sentence, Baker purports to have obtained a state driver's license, worked and paid taxes yearly from 2001 through 2004, and "lived a law-abiding life" as a fully rehabilitated citizen – until July 29, 2004. The Petitioner alleges that on that date, federal and county authorities unlawfully entered his residence and placed him under arrest. He complains that he was then brought to a maximum security BOP prison and his sentence was wrongly calculated to have begun on July 29, 2004.

The Petitioner argues for an equitable grant of credit toward his federal sentence for the time he spent at large. He stresses that it was not his fault that the federal authorities failed to assume custody when the State released him in 2001, and he demonstrated his full rehabilitation in the period he was at large. Therefore, his sudden seizure by federal authorities in 2004 amounts to the loss of a liberty interest without due process and is conduct shocking to the conscience of the Court, in violation of the Fifth Amendment to the U.S. Constitution. Further, Baker argues, the government should be considered to have waived his service of the federal sentence, or should be estopped from counting his sentence as not having begun until 2004. In

support, the Petitioner cites to certain case law in which prisoners were granted equitable relief under these theories, including *United States v. Croft*, 450 F.2d 1094 (6th Cir. 1971); *United States v. Mercedes*, 1997 WL 458740 (S.D.N.Y. 1997) (not reported); and *Lanier v. Williams*, 361 F.Supp. 944 (E.D.N.C. 1973).

The Respondent, however, sees both the facts and the law differently. He points out that, in the earlier time period, when Baker was confined in service of the state sentences, the USMS had properly lodged a detainer. The detainer called for notice so that the Petitioner would be transferred to USMS custody upon completion of his state sentences, and the detainer had been acknowledged by the Florida Department of Corrections on May 19, 1999. Nonetheless, instead of notifying the USMS at the conclusion of the Petitioner's State sentences, the State authorities "improperly released" him. Thus, it was not the fault of the federal authorities but error on the part of the State of Florida that Baker was released from all custody and the USMS was not notified. Therefore, the federal authorities did nothing which would justify applying either a waiver or estoppel theory to the federal sentence.

Respondent does not question the allegations that Baker and his family made inquiries at the local BOP, the USMS, and the FBI, but counters that even so, the local prison had no records because, without the notice from the State, no request for a prison designation for Petitioner had been made. Similarly, there was no "wanted" information in USMS files because of the State's failure to notify the USMS that he was being released. Moreover, the proper investigative agency for Petitioner's inquiry was not the FBI, but the Bureau of Alcohol, Tobacco and Firearms ("BATF").

According to the Respondent, all information on the federal detainer was located in Tallahassee, Florida, which is in the Northern District of Florida, where the sentence was imposed and the detainer lodged. However, it does not appear that Baker attempted to contact anyone in that Court, in that USMS Office, or in the Probation Office in that district. The warden contends that contact with these authorities in the Northern District of Florida "would have resolved the issue." Additionally, the Respondent points out that Petitioner has admitted in the petition that he knew there was an undischarged 235-month federal sentence, and he also possessed a copy of the Criminal Judgment clearly showing that sentence, which he attached to his petition. The Respondent also discusses the cases Baker has cited. On the facts of this case, which include error on the part of the Petitioner who knew that he had to serve a 235-month sentence, no error on the part of federal authorities, and no basis for a grant of equitable relief, Respondent urges the Court to deny Baker the relief sought.

## DISCUSSION

Regardless of who assumed primary custody of Baker on September 10, 1997, he is not entitled to the credits sought through this action. The Respondent is correct that the date a prisoner's federal sentence commences and the kind of credits he may be awarded for time in custody prior to commencement of that sentence have both been dictated by Congress. 18 U.S.C. §3585, **Calculation of a term of imprisonment**, first provides:

> (a) **Commencement of sentence**. – A sentence to a term of imprisonment commences on *the date the defendant is received in custody* awaiting transportation to, or arrives voluntarily *to commence service of the sentence* at, the official detention facility at which the sentence is to be served.

18 U.S.C. §3585(a) (emphasis added). The BOP has calculated that Petitioner Baker was not received in custody to commence service of his sentence until July 29, 2004, and the Court finds that this determination is clearly correct under the statute.

In the same statute, Congress has allowed credits for time spent in custody prior to the official commencement date, but prior custody credit is limited, as follows:

> (b) **Credit for prior custody**. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention prior to the date the sentence commences*--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence.*

18 U.S.C. §3585(b) (emphasis added).

Baker has not denied that he received credit toward his state sentences for all of the time spent in custody for the first time period at issue (September 10, 1997, to August 24, 2001). Since this time in custody has been "credited against another sentence," he is barred from receiving the prior custody credits toward his federal sentence under 18 U.S.C. §3585(b).

The Petitioner's detention by federal authorities for the proceedings in the United States District Court for the Northern District of Florida pursuant to a writ of *habeas corpus ad prosequendum* does not change this result. In *Huffman v. Perez*, 230 F.3d 1358, 2000 WL 1478368 (6th Cir.(Ky.)) (Table, unpublished), the petitioner alleged that he was entitled to substantial credit for time during which he was primarily in the custody of the North Carolina Department of Corrections and, secondarily, in the custody of the United States Marshals,

pursuant to such a writ. The Sixth Circuit ruled against Huffman, stating that "[t]he length of time . . . spent on the federal writ of *habeas corpus ad prosequendum* does not require a departure from the general rule. . . ." *Id.* at 1359. Crediting him again would result in "[i]mproper double credit. *See McClain [v. Bureau of Prisons],* 9 F.3d [503] at 505 [(6th Cir. 1993)]." *Id. See also Broadwater v. Sanders,* 59 Fed. Appx. 112, 113-14, 2003 WL 463481, \*\*1 (6th Cir. 2003) (not selected for publication in the Federal Reporter); *Easley v. Stepp,* 5 Fed. Appx. 541, 2001 WL 252891 (7th Cir . 2001).

Thus, with regard to the first time period at issue, the BOP calculation is correct and the Petitioner is not entitled to any prior custody credits, as any such award would amount to impermissible "double dipping." This result is consistent with earlier decisions of this Court. *See High v. Stine*, 2007 WL 38377 (E.D. Ky. 2007) (unpublished), and *Hayes v. Patton*, 2006 WL 2375609 (E.D. Ky. 2006) (unpublished).

During the second time period at issue (August 24, 2001, to July 29, 2004), Baker was at large. Since prior custody credits can be awarded under 18 U.S.C. §3585(b) only for "time he has spent in official detention prior to the date the sentence commences" and this Petitioner was clearly at large and not "in official detention" for this time period, his claim for any statutory entitlement to prior custody credits must fail.

However, Baker has also asserted that he should be awarded credit for this time period on equitable grounds. Consistent with his cited cases in which equitable relief was granted, the Petitioner stresses that his mistaken release did not occur because of any action he committed, as he was available and prepared to begin service of the federal sentence on August 24, 2001,

-10-

and he would have begun service on that date if a federal official had only directed him to do so. The Petitioner's cases are of some relevance, the Court agrees with the Respondent that they are distinguishable and do not compel relief when the facts are compared to those presented here. *Croft* and *Lanier* are distinguishable upon the facts alone. In *Croft*, a State Court imposed sentences to run concurrently with the prisoner's 3-year federal sentence which had already been handed down, but the local Sheriff immediately and wrongly delivered him to serve the state sentences rather than the earlier federal sentence. After service of almost a year on the state sentences, Croft was released on parole and delivered to the USMS, and only then did his 3-year federal sentence commence.

The Court found that because of the Sheriff's "erroneous delivery", Croft could have ended up serving 5 years' incarceration, when "[n]o one, neither the state nor federal judge, considered that [he] should serve more than 3 years, at the most." *Id.* at 1096. Therefore, the Court fashioned a remedy for him to receive federal credit for the time spent in state custody in order to give effect to the Courts' intent that he serve 3 years' imprisonment, not 5 years.

The Respondent also contends that the Sixth Circuit later limited the *Croft* remedy to those circumstances in which the state orders concurrent sentences. *Vaughn v. United States*, 548 F.2d 631 (6th Cir. 1977). The Court denied relief in the *Vaughn* case and stated, "unlike *Croft*, neither the District Court nor the State Court directed that the sentences run concurrently with each other." *Id.* at 633. Here, as in *Vaughn*, there were no concurrent sentences, and so Petitioner Baker's reliance on *Croft* for his situation is ill-advised. *Vaughn* is controlling under the facts presented in the present case.

The 1973 *Lanier* decision from the Eastern District of North Carolina is equally distinguishable. It involved no federal sentence, but there were concurrent sentences from two separate counties of the State. The prisoner stated that when he was released from confinement based on the Davidson County's sentence being vacated, he believed that his "Johnston County sentences were similarly and automatically vacated, since they were imposed to run concurrently" with the earlier Davidson County sentence. *Lanier*, 361 F.Supp. at 948. Lanier was not in custody for almost five years, when the mistake was discovered and he was detained again.

The District Court pointed to Lanier's belief that the concurrent sentence had been vacated simultaneously with the first one and concluded that it could not say that a untrained layman could not reasonably have such an opinion. More importantly, to support this belief, there was evidence when Lanier was released from state custody, an agent of the State "was present and acquiesced" and there was also evidence that Lanier had later made telephone calls to the state Department of Corrections, which "resulted in the petitioner being instructed to go home."

>The *Lanier* Court adopted a waiver theory and granted relief, stating that:
>
>Once the state, through acts or omissions of its officials, has led a person, through no fault of his own, to believe that he is free of a prison sentence, and makes no attempt for a prolonged period of years to reacquire custody over him, that person should be able to rely on the state's action or inaction and assume that further service of the sentence will not be exacted of him. The state should not later be heard to assert a right to custody over the person whom it has so misled, and to permit the state to do so offends the Due Process Clause of the Constitution. This court is of the opinion that the State of North Carolina has waived its right to any further jurisdiction and custody over the petitioner in regard to the sentences of

>eight to ten years imposed by the Johnston County Superior Court on April 15, 1964.

*Id.* at 947. Clearly, the court's rationale was that the state, by its actions, had waived future custody, and the court would not allow the state to re-assert custody for more service in prison years later. This Court finds that the facts presented here do not include an overlap of confusing concurrent sentences, the same imbalance of inequities, relevant authorities' assurances that the prisoner had been released to total freedom, nor reasonable prisoner expectations, which would justify a similar remedy for Petitioner Baker.

Even if the facts were similar to those in *Lanier*, that case has been effectively overruled. *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999). In *Hawkins*, the Fourth Circuit imposed the substantive due process standard in examining the government's conduct in such situations. While the Fourth Circuit's decision is not controlling here, having found that Baker is not entitled to relief under *Lanier*, it is obvious that he cannot meet the higher standard of *Hawkins*. In summary, this Court can find no action or inaction on the part of the government in this case which justifies the relief being sought.

Finally, the Court has considered the equities presented in *United States v. Mercedes*, 1997 WL 122785 (S.D.N.Y. 1997), which is the most similar to the instant case factually. Mercedes also had several state sentences and one federal sentence to be served and no order for concurrent service of these sentences. However, he had served approximately 15 months in federal custody on a 30-month sentence (essentially one-half of a federal sentence handed down in the United States District Court for the Southern District of New York) when he was taken to a New York prison to finish serving a state sentence. When he was later paroled by the State,

no one notified the federal authorities, and Mercedes was not detained for three years. He was ultimately granted equitable relief by the district court and not required to finish the federal sentence.

However, there are aspects of *Mercedes*' fact pattern which militated in favor of relief for that prisoner and which are dissimilar to those presented here. First, Mercedes was differently situated procedurally. He did not argue about the matter with the BOP, but wait until another year passed, and finally file a petition pursuant to 28 U.S.C. §2241 in the district where he was incarcerated 2 and one-half years after he was re-arrested, as Petitioner Baker has done. Rather, Mercedes brought a motion to the trial court which imposed the half-served federal sentence, asking that it vacate, alter or amend the sentence, pursuant to 28 U.S.C. §2255, for equitable reasons.

Therefore, the trial court – not a distant §2241 Court – weighed numerous factors and vacated its own sentence on the theory that the federal government's failure to incarcerate the movant for a three-year period constituted a waiver of jurisdiction such that requiring Mercedes to serve his federal sentence at this point would violate Due Process. *Mercedes*, 1997 WL 458740 at *1 (*Mercedes II*) (reaffirming the holding in *United States v. Mercedes*, 1997 WL 122785 (S.D.N.Y. 1997) (*Mercedes I*)).

The *Mercedes* court found little case law to guide it on the application of due process analysis to delays in the execution of sentences. Thus, it proceeded to decide that under the concept of "fundamental notions of fairness," it must examine "the 'totality of the circumstances surrounding the delay.'" *Id*. at *2. In examining those circumstances, the court wrote that:

> Although the degree of the Government's negligence in the erroneous release of a prisoner is central to the inquiry, other factors are also pertinent to determining whether the delayed execution of a sentence violates due process. Factors to be considered include the length of the government's delay in correction of its error, the reasons for the delay, the petitioner's culpability for or knowledge of the error, the prisoner's reasonable expectations based on the release, and the prejudice to the prisoner resulting from delay in correcting the error.

*Id.*

In granting Mercedes relief on the government waiver theory, the District Court wrote that the federal government – specifically the USMS – was at fault for the State's failure to notify the federal authorities upon Mercedes' completion of the state sentences, as the USMS failed to lodge a detainer. Further, the Court found that this fault was compounded by the federal government's negligent failure to make routine checks more often than at 3-year intervals. *Id.* at *3. In the end, "[t]hree years of neglect on the part of the Government must be balanced against three years of successful rehabilitation. The balance tips toward releasing Mercedes." *Id.* at *4. Therefore, after weighing the "circumstances," the district court which had sentenced Mercedes vacated the last half of the sentence which it had imposed.

Perhaps the fact that the court was striking the balance of is own sentence was a factor in assessing the totality of Mercedes' circumstances (or perhaps not). Regardless, this Court finds that Baker's posture as a §2241 Petitioner, asking a distant District Court to affect the length of time which he is serving on another District Court's sentence, is a part of the totality of the circumstances which are different from Mercedes' and which militate against granting Baker the relief which Mercedes was granted.

Further, the district court noted in *Mercedes* that the Movant had been compliant with the terms of his parole and had regularly reported to his probation officer during the 3-year time period. This compliance and Mercedes' record of compliance with his probation officer are additional circumstances which differ from those presented by Baker. As to the prisoner's reasonable expectations upon his release, this Court finds that Mercedes, having served half of the federal sentence before being released from State custody and then having been told to go home, had a greater expectation of no further detention than did Petitioner Baker, who knew he had not begun to serve a lengthy federal sentence.

The *Mercedes* court did not comment on whether the length of the sentence yet to be served was a factor in its decision, but this Court notes the length of the federal sentence to be served is also a part of the totality of the prisoners' circumstances. Having served half of his federal sentence, Mercedes had barely more than a year to serve. Three years after the federal authorities made the mistakes of failing to lodge a detainer and failing to conduct more frequent routine checks of state prisoners, the prisoner's re-commitment to serve the remaining months on that sentence would occur two years after the sentence could have been fully completed, had the federal government not made the mistakes it made.

In contrast, considering the totality of the circumstances here, this Court finds that Baker's circumstances were so different from Mercedes' that they present no basis for the Court to grant the equitable relief granted to Mercedes. Importantly, in this case, there was no federal government error: the USMS properly lodged a detainer. The State of Florida cannot be said

to have waived service of a *federal* sentence, and the federal government itself made no error which could be said to be a waiver of the requirement that Baker serve the federal sentence.

With respect to the prisoner's reasonable expectations, this Court agrees that Mercedes could have reasonably believed that his service of half the sentence had satisfied the government, when he was not re-incarcerated with just a year to go. The Petitioner in this case, however, had a lengthy federal sentence (235 months); had served none of it; and had every reason to believe that he had the full sentence to yet serve. In fact, Baker admits in his petition that he expected the USMS to take over his custody so as to serve the federal sentence when Florida released him (specifically, he attached his copy of the Judgment setting out this obligation to the petition).

In summary, this Court has examined the relevant authorities and concludes that Petitioner Baker is not entitled to any credit for the time periods at issue. Therefore, this §2241 petition for a writ of habeas corpus will be denied.

One final matter should be addressed. In the response of the BOP at the last level of appeal, the Administrator of National Inmate Appeals concurs with the resolution of Baker's earlier appeals about the matter, denying the Petitioner the credits he had sought for the reasons set forth herein, *supra*. The following appears for the first and only time:

> Additionally, consultation with the Regional Office revealed that your case was considered and denied a *nunc pro tunc* designation per <u>Barden v. Keohane</u>. Therefore, your sentence begins on the date you came into federal custody, and you are not entitled to any jail credit.

(attachment to Petition, dated January 11, 2006)

Petitioner has claimed that the *nunc pro tunc* designation has affected the length of his sentence and, therefore, he had a right to be informed of any such consideration, to have an

-17-

opportunity to make his case, and to know the BOP's reasons for denying the designation. Baker alleges that since this one statement is all he knows of any *nunc pro tunc* consideration, he could not appeal the matter administratively with the BOP, and further, the BOP has thereby also prejudiced his ability to seek judicial review of its denial.

Like the Petitioner, the Court also has no record of Baker's consideration for a *nunc pro tunc* designation, nor of the reasons it was denied. Baker, however, has the BOP administrative remedy system still available to him to make a request for a *nunc pro tunc* designation and then to appeal the matter to exhaustion, thereby creating a record for the Court's review. It must be remembered that one of the reasons for the exhaustion of administrative remedies requirement is to prepare a record. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980).

Through the administrative remedy procedures, Petitioner Baker himself has the means to make his case on the *nunc pro tunc* issue and to simultaneously obtain a record for both administrative and judicial review of resolution of the issue. The Court offers no opinion on the merits of any request for a *nunc pro tunc* designation which the instant Petitioner may make. However, the *nunc pro tunc* issue will be dismissed without prejudice to Baker's bringing another §2241 proceeding after exhausting the issue administratively, should he desire to do so. The rest of the claims herein will be dismissed with prejudice.

## CONCLUSION

Accordingly, the Court being sufficiently advised, it is

**ORDERED** as follows:

(1) John David Baker's petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241, is **DENIED**;

(2) Petitioner Baker's motion to add a party to this proceeding [Record No. 21] is **DENIED**; and

(3) this action will be **DISMISSED**, *sua sponte*, from the docket of the Court; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This 28th day of June, 2007.

Signed By:
*Danny C. Reeves* DCR
United States District Judge